# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**KENNETH PALMER and LINDA PALMER,**

        **Plaintiffs,**

**v.**                                 **Case No:  6:19-cv-2178-Orl-37DCI**

**DIAMOND RESORTS INTERNATIONAL CLUB, INC.,**

        **Defendant.**

---

# REPORT AND RECOMMENDATION

This cause comes before the Court for consideration after oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Motion to Enforce Settlement (Doc. 6)** |
| **FILED:** | **December 24, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.     Background

On February 5, 2019, Plaintiffs Kenneth and Linda Palmer filed a complaint in state court against Defendant Diamond Resorts International Club, Inc. seeking damages related to Defendant's alleged violation of the Florida Consumer Collection Practices Act (FCCPA).  *See* Doc. 1 at 1.  On October 15, 2019, Plaintiffs filed an amended complaint in state court that included a claim under the Telephone Consumer Protection Act (TCPA).  *See id.* at 2.  On November 6, 2019, Plaintiffs' Counsel sent Defendant's Counsel an email offering to settle the case.  Doc. 6-1. On November 14, 2019, Defendant's Counsel sent a response email stating that "Diamond accepts

the Palmers' settlement offer . . . ."  *Id.*  In the response Email, Defendant's Counsel also stated that Defendant would file a notice of removal "to preserve [Defendant's] right to proceed in federal court" and would prepare the proposed settlement agreement and provide it to Plaintiffs for review. *Id.*  On the same day, Plaintiff's Counsel replied by thanking Defendant's Counsel.  *Id.*  Plaintiff's Counsel then stated that he would await the proposed settlement agreement.  Later that same day, Defendant filed a notice of removal based on the federal question raised by the TCPA claim.  *See generally* Doc. 1.

However, the parties faltered after attempts to reduce the agreement to a formalized written document resulted in the introduction of material modifications to which Plaintiffs and Defendant could not agree.  *See, e.g.*, Doc. 6 at 6-7; Doc. 7 at 1-5.  Accordingly, on December 24, 2019, Plaintiffs filed the motion to enforce settlement that is now before the Court.  Doc. 6 (the Motion). Defendant timely responded (Doc. 7, the Response), and Plaintiffs filed a reply (Doc. 11, the Reply).  On February 4, 2020, the Court held a hearing on the Motion and heard argument of counsel.  Doc. 14.  For the reasons set forth below, the undersigned finds that the Motion is due to be granted.

## II.    Applicable Law

Federal district courts have the inherent power to summarily enforce settlement agreements entered into by litigants in a pending case.  *See Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987).  "In Florida, settlement agreements are favored as an efficient way to settle disputes and as a means to conserve judicial resources[,]" and "[c]ourts will enforce them when it is possible to do so."  *BP Prods. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007).

"A motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract . . . ." *Conte v. Winn Dixie Stores, Inc.*, No. 3:13-cv-463-MCR-EMT, 2014 WL 4693072, at *2 (N.D. Fla. Sept. 22, 2014). To prove the existence of a contract under Florida law, the propounding party must demonstrate the existence of: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). An essential, or material, term is "[a] contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." Material Term, Black's Law Dictionary (9th ed. 2009). Of course, the essential terms of any given contract may vary depending on the circumstances of the parties' transaction. *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. 2d DCA 2001). But, at bottom, they "must include the terms specified in an offer to make a contract." *Id.* Therefore, as here, a party seeking to enforce a settlement agreement "has the burden to prove assent by the opposing party and must establish that there was a meeting of the minds or mutual or reciprocal assent to certain definite propositions." *Id.* "Mutual assent does not mean that two minds must agree on one intention; rather, the formation of a contract depends on the parties having said the same thing, not on their having meant the same thing." *Conte v. Winn Dixie Stores, Inc.*, 2014 WL 4693072, at *3 (citing *Gendzier v. Bielecki,* 97 So.2d 604, 608 (Fla. 1957)). "A trial court's finding that there was a meeting of the minds between the parties must be supported by competent substantial evidence." *BP Prod. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D. Fla. 2007), *as amended* (Jan. 3, 2007).

"Under the objective standard of assent, [courts] do not look into the subjective minds of the parties; the law imputes an intention that corresponds with the reasonable meaning of a party's words and acts." *Kolodziej*, 774 F.3d at 745. "As long as an intent to settle essential elements of

the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the [Florida courts]." *Allapattah Servs., Inc. v. Exxon Corp.*, Nos. 05-21338-CIV, 91-0986-CIV, 2007 WL 7756735, at *2 (S.D. Fla. Sept. 26, 2007).  "In assessing whether the proponent of the unsigned agreement has made the requisite showing, courts use an objective standard under which '[t]he making of a contract depends . . . not on the parties having meant the same thing but on their having said the same thing." *Wells Fargo Bank, N.A. v. Mision Cristiana Bethesda, Inc.*, No. 6:16-cv-1572-ORL-37KRS, 2017 WL 1476307, at *3 (M.D. Fla. Apr. 25, 2017) (citing *Specialty Disease Mgmt. Servs., Inc. v. Aids Healthcare Found.*, No. 3:01-cv-1353-J-32TEM, 2003 WL 25608009, *4 (M.D. Fla. Oct. 21, 2003)).

## III.   Discussion

Upon consideration of the email chain filed in support of the Motion, the undersigned finds that Plaintiffs have demonstrated by competent substantial evidence the existence of an enforceable contract.  *See* Doc. 6-1.  Specifically, on November 6, 2019, Plaintiffs' Counsel sent Defendant's Counsel an Email titled "Confidential Settlement Communication."  Doc. 6-1 at 2 (the November 6th Email).  The November 6th Email reads as follows:

> I know you are dying to get this file off of your desk before the holidays. Also, I have a weird feeling that you convinced your client to resolve this case based on the following:
>
> 1.  Diamond to pay $30,000;
> 2.  Forgiveness of the alleged debt owed;
> 3.  The Parties enter into a mutually-agreeable general/mutual release with a limited confidentiality clause;
> 4.  Palmers to dismiss their claims with prejudice after receipt of funds; and
> 5.  Each party to bear its own fees and costs.
>
> Tell me my gut feeling was right?

*Id.*  On November 14, 2019, Defendant's Counsel responded stating:

Diamond accepts the Palmers' settlement offer as set forth below:

1. Diamond to pay $30,000;
2. Forgiveness of the Palmers' outstanding loan obligation;
3. The Parties enter into a general/mutual release (to include the Diamond affiliates);
4. The Parties agree to non-disparagement and confidentiality;
5. Palmers to dismiss their claims with prejudice after receipt of funds; and
6. Each party to bear its own fees and costs.

As we discussed, we will file a notice of removal to preserve our right to proceed in federal court[,] but you agree to a 2-week extension for the Club to answer to allow us to work through the settlement agreement.

We will prepare the draft settlement agreement and provide it for your review.

*Id.* at 1-2 (the November 14th Email).  On the same day, Plaintiffs' Counsel responded stating "Thanks, [counsel].  We will await the proposed settlement agreement."  *Id.* at 1.

Based on the foregoing, the undersigned finds that an enforceable settlement agreement was created (the Settlement).  In particular, the November 6th Email offered Defendant dismissal of Plaintiffs' claims with prejudice in exchange for $30,000 and forgiveness of Plaintiffs' alleged outstanding debt.  *Id.* at 2.  By its terms, Defendant could accept the Offer by responding to Plaintiffs' Counsel.  *Id.*  Eight days later, Defendant's Counsel accepted the Offer on behalf of Defendant in an email to Plaintiffs' Counsel.  *Id.* at 1-2.  Both the Offer and the Acceptance also included provisions such that: (1) the "Parties" would enter a general/mutual release; (2) the "Parties" would agree to confidentiality; and (3) each party would bear its own fees and costs.  *Id.* The consideration for the Settlement was Defendant's promise to pay Plaintiffs $30,000 and forgive Plaintiffs' alleged outstanding debt in exchange for Plaintiffs' promise to dismiss their claims against Defendant with prejudice.  *Id.*  Hence the November 6th Email specified all the material or essential terms applicable to their agreement – subject matter, price, payment, and confidentiality – and the November 14th Email reiterated all of those terms.  *See* Material Term, BLACK'S LAW DICTIONARY (9th ed. 2009).

Nonetheless, Defendant takes issue with the meaning of the term "confidentiality" as used in the emails.  So, on February 4, 2020, the Court held a hearing on the Motion.  Doc. 14.   On the record at the hearing, the parties confirmed that the only issue of contention regarding the Settlement is the interpretation of the term "confidentiality."  *Id.*   Plaintiffs argue that the "confidentiality" agreement binds the parties to the agreement and does not necessarily also bind counsel (subject to consideration of agency principles and client confidentiality).  *See, e.g.*, Doc. 14.   Defendant argues that the "confidentiality" agreement they proposed and bargained for included a requirement that Plaintiffs' counsel personally sign – and be bound by – the confidentiality clause of any settlement agreement entered into in this action.  *See id.*

Specifically, Defendant argues that Plaintiffs offered to settle "with the vague and undefined term of 'limited confidentiality,'" and that Defendant rejected this offer and presented a counteroffer "requiring confidentiality."  Doc. 7 at 6.  Defendant argues that "[t]he parties neither said the same thing nor meant the same thing," and thus there is no settlement agreement.  *Id.*  The undersigned is not persuaded by Defendant's argument.  What is lurking below the surface here, and what became clear at the hearing, is that Defendant is a timeshare company and Plaintiffs' Counsel are attorneys who work with timeshare exit companies.  What Defendant truly – and subjectively – seeks is to secure confidentiality from Plaintiffs' Counsel in order to prevent Plaintiffs' Counsel from using this settlement as a means to advertise success in extracting a timeshare owner from a timeshare contract.  At the hearing, Defendant's Counsel repeatedly described this as "*full* confidentiality," although Counsel conceded both that such confidentiality is a highly unusual proposition in a civil case and that the term "*full* confidentiality" was not actually used in the November 14th Email.  This Court has extensive experience involving several still-pending actions in which timeshare companies (including companies utilizing the "Diamond"

name) are suing attorneys (in much the same position as Plaintiffs' Counsel) in a bid to obtain damages and injunctions against those attorneys offering purported timeshare exit services. But to the extent Defendant seeks to preemptively prohibit Plaintiffs' Counsel from utilizing the settlement in this case in future advertising or client consultations, that is Defendant's subjective motivation and intention, which is not borne out in the written correspondence forming the Settlement. And along those same lines, it was clear at the hearing that a core dispute that has led to the Motion is whether Plaintiffs' Counsel would be bound personally by a confidentiality provision entered into by the parties (i.e. whether it serves any actual purpose for Plaintiffs' Counsel to personally sign a confidentiality agreement entered into between the parties). Defendant argued that general agency principles would bind Plaintiffs' Counsel to a confidentiality agreement entered into by the parties, regardless of whether they personally signed the agreement. Plaintiffs' Counsel took no firm position on the matter at the hearing, and probably for good reason. The question before the Court is whether a contract was formed, not whether particular, hypothetical conduct by Plaintiffs' Counsel would result in a breach of that contract; an issue that would likely be determined by a state court (this action was removed on a federal question, and the settlement involves non-diverse parties and a $30,000 payment).

Returning to the actual correspondence, in the November 6th Email, Plaintiffs made an offer and outlined five terms. Doc. 6-1. In the November 14th Email, which Defendant argues is a rejection and counteroffer, Defendant's Counsel stated, "Diamond accepts the Palmer's offer as set forth below," and then reiterated the terms (although splitting one term into two, resulting in six enumerated terms). The undersigned finds that the reasonable meaning of the November 14th Email stating that "Diamond accepts the Palmer's offer" is an acceptance of Plaintiff's offer (i.e. the November 6th Email). Again, the only term even at issue – and which Defendant asserts

renders the acceptance a counteroffer – concerns confidentiality.  And although the undersigned concedes that the two emails do not contain the exact same words, they objectively express an identical meaning.[1]  Plaintiffs' Counsel offered that, "The parties enter into a . . . limited confidentiality clause."  Doc. 6-1 at 1-2.  Defendant's Counsel then stated that Defendant "accepts the Palmers' settlement offer as set forth below: . . . The parties agree to . . . confidentiality."  *Id*.  Plaintiffs' Counsel then thanked Defendant's Counsel.  *Id*.  By that exchange, the undersigned finds that the November 14th Email expressed acceptance of a binding contract that included an agreement of confidentiality between the parties, based upon the "reasonable meaning of [Defendant's] words and acts."  *Kolodziej*, 774 F.3d at 745.

However, even assuming that the November 14th Email is a counteroffer rather than an acceptance, Defendant's argument still fails.  In response to the November 14th Email, Plaintiffs' Counsel sent a response thanking Defendant's Counsel and stating that Plaintiffs would await the proposed settlement agreement.  Doc. 6-1.  The reasonable and objective interpretation of Plaintiffs' Counsel's reply email is an acceptance of a "counteroffer" – assuming *arguendo* one was made – that created an enforceable settlement agreement.  While every expression of thanks in response to a settlement offer will not work an acceptance, viewing the three emails together leaves the undersigned with the clear impression – one that is reasonable, objective, and supported by competent substantial evidence – that Plaintiffs' Counsel's reply was an acceptance, assuming again that the November 14th Email altered any materials term of the initial offer and, in doing so, operated as a counteroffer despite its' plain language of acceptance.  Defendant argues that

---

[1] The Court notes that other itemized terms in the two emails at issue are not set forth in exactly the same words.  However, Defendant attacks only the issue of mutual assent as to the confidentiality language, thus conceding implicitly (at least in the context of the Settlement) that the words need not be exactly the same in an offer and acceptance to create an enforceable contract. In sum, the words used in the two emails do not materially differ.

Plaintiffs' response cannot be an acceptance because there was no "meeting of the minds" with respect to confidentiality.  *See* Doc. 7 at 6-7. Again, "[u]nder the objective standard of assent, [courts] do not look into the subjective minds of the parties; the law imputes an intention that corresponds with the reasonable meaning of a party's words and acts." *See Omni Healthcare Inc. v. Health First, Inc.,* No. 6:13-cv-1509-ORL-37DCI, 2017 WL 3658837, at *1 (M.D. Fla. Aug. 24, 2017)(quoting *Koloziej*, 774 F. 3d at 745).  Here, the language of the November 14th Email regarding confidentiality is clear and unambiguous.  The November 14th Email states that "The Parties agree to . . . confidentiality."  Doc. 6-1.  The undersigned declines to consider Defendant's subjective intention – unexpressed in the correspondence at issue – that such a statement must also bind Plaintiffs' Counsel personally as signatories to a written settlement agreement. *See Kolodziej*, 774 F.3d at 745.

Defendant also argues that this case is similar to *Wells Fargo Bank, N.A. v. Mision Cristiana Bethesda, Inc*., 6:16-cv-1572-ORL-37KRS, 2017 WL 1476307, at *3 (M.D. Fla. Apr. 25, 2017), where the court found that the plaintiff failed to submit the substantial evidence necessary to establish a meeting of the minds between the parties.  In that case, the court found that the record did not support a finding that the parties had reached an enforceable settlement agreement.  *Id.* at *3-4.  The record in *Wells Fargo* included an offer, a counteroffer that added a new essential term, and a rejection of that counteroffer.  *Id.* at *4.  Based on that record, the court could not find that the parties had reached an enforceable settlement agreement.

Unlike in *Wells Fargo,* however, in this case there is an offer (the November 6th Email) and – by its own language – an acceptance.  *See* Doc. 6-1 ("[Defendant] accepts [Plaintiffs'] offer…").  Further, even assuming the November 14th Email was a counteroffer, unlike the counteroffer in *Wells Fargo,* the counteroffer here was not rejected.  *See* Doc. 6-1.  Additionally,

Plaintiffs in this case have presented substantial evidence of a meeting of the minds.  Unlike the litany of unsigned or partially signed draft contracts in *Wells Fargo*, the email chain in this case establishes the existence of an enforceable contract.  *See Omni Healthcare Inc. v. Health First, Inc.,* No. 6:13-cv-1509-ORL-37DCI, 2017 WL 3658837, at *2-*4 (M.D. Fla. Aug. 24, 2017) (finding that a similar email chain formed the basis for concluding that an enforceable settlement agreement was created).

As a final matter, Defendant makes some argument related to the drafts of proposed settlement agreements that may or may not constitute embodiments of the Settlement.  However, the undersigned does not reach the matter of any proposed settlement agreements.  In considering a motion to enforce a settlement agreement, a court must determine whether there is an enforceable contract.  *See, e.g., Conte v. Winn Dixie Stores, Inc.*, 2014 WL 4693072, at *2.  Here, Plaintiffs, as the moving party, have established that an enforceable contract was formed over email by demonstrating that there was: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.  *Kolodziej*, 774 F.3d at 740.  "[E]-mail communications do not need to be reduced to a formal, written settlement agreement to become binding."  *See United States ex rel. Doe v. Health First, Inc.*, Case No. 6:14-cv-501-Orl-37DCI (Doc. 142); *see also Khoury v. Tomlinson*, 518 S.W.3d 568, 575–79 (Tex. App. 2017).  Thus, there is a binding agreement.  In the absence of a modified agreement, Defendant remains bound by the Settlement as embodied by the November 6th Email and its acceptance.  Any proposed modifications to the Settlement – in the form of "proposed settlement agreements" or otherwise – are therefore irrelevant to the Court's decision in this case.

## IV.     Conclusion

The undersigned finds that the parties entered into a settlement agreement that requires Defendant to pay Plaintiffs $30,000 and forgive Plaintiffs' outstanding loan obligation in exchange for Plaintiffs dismissing this action with prejudice, and that contains other common settlement terms (i.e. a mutual general release, a non-disparagement provision, and a confidentiality provision), with each party to bear its own fees and costs.  Accordingly, it is **RECOMMENDED** that the Motion (Doc. 6) be **GRANTED**.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 14, 2020.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy